### TEAGUE et al. v. WYLIE et al.

No. 13626.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 12, 1937.

Landman & Landman, of Athens, for plaintiffs in error.

R. H. Sigler, of Athens, and Clay Cotten, of Palestine, for appellees.

DUNKLIN, Chief Justice.

This suit was instituted by Mrs. Josie Wylie and Mrs. Ray Stringfield, joined pro forma by their respective husbands, against Mrs. Willie Teague and her husband, Benton Teague, in the usual form of trespass to try title to recover an undivided one-half interest in five separate tracts of land, most of which is situated in Anderson county, the balance in Henderson county. In a separate count in their petition, plaintiffs sought a cancellation of two certain deeds, executed by Mrs. M. J. Bristow, now deceased, purporting to convey title to all of said lands because, at the time of execution of those instruments, Mrs. Bristow was of unsound mind and had been duly and legally adjudged to be non compos mentis by the county court of Henderson county upon application of the defendants, who at the same time were appointed guardians of her estate and duly qualified as such by giving bond and taking the oath required by the statutes, which guardianship was duly pending and in full force when the deeds were executed, and therefore those deeds were void because forbidden by article 4205, Vernon's Texas Civil Statutes.

Defendants answered with a general demurrer and plea of not guilty, and specially claimed title through the deeds in question with allegations same were executed by

Mrs. M. J. Bristow while sane, in consideration of defendants' agreement at their expense to support and care for her during the remainder of her life, which agreement had been performed up to the date of her death.

In an alternative plea, defendants alleged that they had, at their own expense, cared for and supported Mrs. Bristow for a period of six years immediately preceding her death; that their services so rendered were necessary because of the advanced age and feeble health of Mrs. Bristow, and that their said services were reasonably worth the sum of $6,000; that the value of all the estate of the deceased did not exceed that sum; followed with a prayer that should it be determined that deceased was of unsound mind, then by reason of the services so rendered defendants should be decreed title to all the property left by the deceased at her death "upon a quantum meruit basis."

Upon trial of the case, the following facts were conclusively established: The lands in controversy belonged to Mrs. M. J. Bristow as her half of the community estate of herself and husband, Dr. R. C. Bristow, at the date of his death. The defendant Mrs. Willie Teague and her sister, Mrs. J. Parmer, were daughters of Dr. Bristow, but were not related by blood to Mrs. M. J. Bristow, who married their father while they were small children.

Defendants Mrs. Willie Teague and her husband filed an application in the county court of Henderson county for appointment of them as guardians of the estate of Mrs. M. J. Bristow on the grounds that she was about 85 years of age, non compos mentis, and mentally and physically unable to take care of herself or her property, and required the constant care and oversight of some one to look after her wants.

On July 14, 1924, the county court made and entered an order, reading as follows:

"And now on this the 14th day of July and being the regular term of said court, came on to be heard the application of Benton Teague and his wife, Mrs. Willie Teague, to be appointed Guardian of the estate of Mrs. M. J. Bristow, and it appearing to the Court, from the testimony offered, that Mrs. M. J. Bristow is possessed of real and personal property that needs to be looked after and attended to and that she is incompetent to look after it on account of her mind; that she is about 80 or 85 years old, that she is practically helpless and that her mind is impaired to that extent that she is not competent to take care of herself or to take care of her property and it appears from the proof that she is almost demented, that is, she has lost her mind and it appearing to the court that she needs a guardian to look after her and her said estate. And it appearing that said application has been filed in this court for several months and that due and legal notice thereof has been given as the law requires and it appearing that there is no protest filed herein and no objections to the acting on and granting of said application and it further appearing that Benton Teague and his wife are in no way disqualified from acting in said capacity, but really are proper persons to be appointed such guardian, for the reason that Mrs. Bristow is childless and lives with them, and Mrs. Teague is her step-daughter, and Mrs. Bristow's husband has long since been dead and that it was his request that she and her sister—Mrs. Parmer—who is now dead, should look after and take care of his wife and their step-mother; and it appearing that they have filed a good and sufficient bond herein which has been approved by the court and that they have taken the oath as required by law.

"It is, therefore, ordered and decreed that Benton Teague and his wife, Willie Teague, be and they are here and now appointed guardian of the estate of Mrs. M. J. Bristow, non compos mentis, with the authority and power to take charge of all property belonging to her, an inventory of which has been filed in the court, which is here and now approved and ordered to record."

The inventory so filed was duly verified by Benton Teague and the appraisers and listed the following as belonging to the estate of Mrs. M. J. Bristow:

| | |
|---|---:|
| 5 a W. V. Hall Sur Henderson Co. | 250.00 |
| 7 a E. Patterson Sur | 750.00 |
| 160 a I. J. Layton Sur | 160.00 |
| 10 a F. F. Williams Sur Henderson Co. | 250.00 |
| 300 a F. F. Williams Sur Anderson Co. | 750.00 |
| Notes and Accounts | |
| Note on Jesse Hanks'-rent, Anderson Co. land for the year 1924 | 125.00 |
| Bal due school voucher Modoc O. C. 1922 | 18.20 |
| Due on Modoc School Voucher 1923 | 236.26 |
| Due on Modoc School Voucher 1924 | 253.75 |
| The above school vouchers may be good and may not be, hard to place value on them | |
| | 633.20 |
| July 15/24—Cash on Hand | 319.19 |

The lands so listed are the lands in controversy here.

Defendants Mrs. Willie Teague and her husband took charge of the estate under said appointment and before the end of the year 1924 collected all the outstanding personal obligations listed in the inventory, and also $246.89 rents on part of the lands listed.

On January 16, 1925, which was six months and two days after the appointment of those guardians, and while the guardianship was still pending in court, Mrs. M. J. Bristow executed to defendants Mrs. Willie Teague and Benton Teague, who were then still acting as guardians of her estate, two deeds each dated and acknowledged on January 16, 1925, purporting to convey to the grantees full title to all the five tracts of land in controversy here and listed in the inventory as belonging to her estate with covenants of warranty of title, and those deeds were duly filed and recorded in the records of deeds in the respective counties where the lands were located. The consideration recited in each of those deeds was: "The sum of ten dollars cash in hand paid the receipt of which is hereby acknowledged, the natural love and affection which I bear for the grantees herein and the agreements of the grantees to care for me, house and clothe me and keep medical aid and attention for me during the remainder of my life."

Mrs. M. J. Bristow died during the year 1927, some two years after execution of those deeds.

And upon the trial of the case before a jury, counsel for plaintiffs and defendants entered into the following agreement, which was reduced to writing and to be considered as part of the evidence:

"It is agreed by and between the parties to this suit that the common source of title to the lands involved in this suit is in Dr. R. C. Bristow and Mrs. M. J. Bristow, and that there is a regular chain of title from the State of Texas to Dr. R. C. Bristow and Mrs. M. J. Bristow.

"It is further agreed by the parties to this suit that prior to the death of Dr. R. C. Bristow, the said Dr. R. C. Bristow made a will, which was probated after his death, or during the year 1921.

"It is further agreed that Mrs. M. J. Bristow made her will the same day that Dr. R. C. Bristow made his will, and that in her will she willed her property jointly to the plaintiffs and the defendants in this case. Upon the terms of the will, Mrs. Willie Teague was to receive one-half of the property of Mrs. M. J Bristow, at her death, and Mrs. J. Parmer was to receive the other one-half; and that Mrs. J. Parmer died about the year 1924, and her only two daughters at law are Josie Wylie and Grace Stringfield, who are the plaintiffs in this case. Under the terms of the said will the defendant in this suit was to receive one-half of the property and the plaintiffs, Josie Wylie and Grace Stringfield were to receive the other one-half jointly."

Defendants introduced a number of witnesses whose testimony was to the effect that in their opinion Mrs. M. J. Bristow was sane at or about the time she executed the two deeds; also testimony to show the services rendered Mrs. Bristow and the value of same, her need therefor on account of enfeebled health and practical blindness, expenses paid by defendants for medicines, for her burial, etc.

The jury returned a verdict finding that Mrs. M. J. Bristow did not have sufficient mental capacity to understand the nature and consequences of her act at the time she executed the two deeds to the defendants. That the amount of expenses incurred by defendants in caring for Mrs. Bristow after she came to live with them until her death was $2,500; but that $2,100 of that sum was paid out of her own funds. In this connection it is proper to note that according to the testimony of defendant Mrs. Willie Teague, which was not controverted, Mrs. Bristow lived in her home for six years, beginning in 1921 and ending in the year 1927, and during all that time defendant had looked after and cared for her health and comfort.

Judgment was rendered, reciting the foregoing agreement of counsel and based thereon vesting title in plaintiffs to the half interest in the land sued for and the other half in defendants, and canceling the two deeds made to them by Mrs. Bristow. The court made a further finding of fact that the defendants' claim for services rendered was barred by the statute of limitation of four years, and by reason thereof she was not entitled to recover therefor.

In their motion for new trial, defendants alleged that after the trial their counsel discovered for the first time the will of Mrs. M. J. Bristow had never been probated in Henderson county, and attached thereto a certificate of the clerk of the county court of that county that after diligent

search he had found no minutes of the probate court of that county showing that said will had ever been admitted to probate, and that his search covered the period beginning in January, 1927, and extended up to the date of the trial.

It was further alleged that said counsel had agreed that the will had been duly probated in Henderson county under a misapprehension of the facts. However, the motion did not allege any facts to show that his failure to sooner make such discovery was not due to any negligence on his part; nor was it verified. Counsel for plaintiffs did not file any reply to the motion; nor has he favored us with a brief in reply to appellants' briefs.

But an inspection of the agreement in question shows an absence of any stipulation that the will had been probated by the county court of Henderson county, as supposed by counsel for defendants, and no proof was offered to show such probate in that county or any other county, although at the time of trial the testatrix had been dead nearly nine years.

Manifestly, the admission of counsel for defendants, in the motion for new trial, that the agreed statement, copied above and used on the trial, included an admission of the probate of the will in Henderson county, was also a mistake. And since the will did not become effective unless admitted to probate by a court of competent jurisdiction, the judgment decreeing title to one-half interest in the land to plaintiffs for which they sued and the other half to defendants without proof of the probate of the will must be reversed. 44 Tex.Jur. § 299, p. 880.

The contention of appellants presented by several assignments of error that the testimony offered showed conclusively that Mrs. M. J. Bristow was sane at the time she executed the two deeds in controversy, by reason of which the finding of the jury to the contrary cannot be given effect to destroy those deeds, is overruled, since certain facts testified to by the witnesses as a part of their evidence, in addition to the grounds alleged by defendants in their application for guardianship, were sufficient to support the finding.

But independently of that finding, the two deeds were void, under the express provisions of article 4205, Vernon's Civ.Statutes; having been executed by the ward to her guardians during the pendency of the guardianship.

Pending the guardianship, the county court was vested with exclusive original jurisdiction to determine the merits of defendants' counterclaim for services rendered the ward. Hence the judgment of the district court trying the case, denying defendants any relief on that counterclaim, was correct for lack of jurisdiction, independently of the reason recited in the judgment.

From the foregoing conclusions, it follows that the judgment of the trial court, canceling the two deeds under which appellants claimed title and denying their counterclaim already noted, is affirmed. But the judgment denying the counterclaim will be without prejudice to the right of appellants, if any they have, to assert the same in the guardianship proceedings still pending.

The judgment decreeing title to the land in controversy, one-half in plaintiffs and one-half in defendants, is reversed and the cause is remanded to give all parties an opportunity to procure proof of proper probate of the will by a court of competent jurisdiction, if such proof is available, and if that proof cannot be made, then to have the will probated by a court of competent jurisdiction, if the same can be done under the provisions of articles 3325 and 3326, Vernon's Texas Civil Statutes, notwithstanding the time elapsed since the death of the testatrix.

When the case is retried after its remand, the two issues here determined by this court adversely to appellants, as shown above, shall not be again tried.

This judgment will be certified to the court below for observance.

The costs of appeal will be taxed against appellees and appellants, share and share alike.