GERÓNIMO QUIÑONES ARROYO and ANA LUISA QUIÑONES ARROYO, Plaintiffs and Appellants, *v.* RUDDY ESCALERA IRIZARRY and SOLEDAD ESCALERA, Defendants and Appellees.

No. R-70-246.     Decided May 12, 1971.

---

*Carmelo Ávila Medina* and *Roberto Ávila Rivera* for appellants. *Soledad Escalera, pro se. Samuel Maduro Classén* for appellees.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

We must determine on this occasion, in synthesis, whether an action to annul a will has prescribed. We conclude in the affirmative for which reason it is proper to affirm the judgment rendered by the trial court to that effect.

The facts of this case are the following:

Mrs. Rosario Quiñones at El Paso County, State of Texas, executed a will by virtue of which she bequested all her properties, after the expenses of her sickness and burial and her debts had been paid, to the INSTITUTO DE LAS SIERVAS DEL

SAGRADO CORAZÓN DE JESÚS Y DE LOS POBRES (hereinafter called the Institute). She appointed the Mother Superior as her executrix. She signed it on December 22, 1933, before two witnesses who also signed the document. Right below Notary Cleofas Calleros, from El Paso, indicated under his signature that each one of the subscribers had expressed that they had signed the document "for the considerations and purposes which are expressed in the same." On the back there appears a certificate signed by another notary to the effect that María D. Madrazo said that she met Rosario Quiñones on December 22, 1933; that she was one of the witnesses to the latter's will the same as María Amada Ramírez whom she also met on said date; that both of them signed said will jointly with the testatrix; that then she learned from the testatrix herself that said document was her last will and testament, which, after having read it, all of them signed on said date. Finally, there appears another certificate from the Secretary of the State of Texas to the effect that notary Calleros qualified as notary of El Paso on June 2, 1933, for a term which expired on June 1, 1935.

Mrs. Rosario Quiñones died on October 1, 1940, at Web County in Texas. At the time of her death said lady appeared as owner of a parcel of land in San Juan having an area of some 589 meters.

The Institute sold said property to appellees Escalera Irizarry, by means of deed No. 27, executed in San Juan, Puerto Rico, on August 9, 1967, before Notary Agustín Pérez Rodríguez, for the amount of $1,300 which was recorded in the Registry of Property of San Juan, First Section, with the curable defect that the domicile and other circumstances of the Institute were not set forth and that it was not established that the necessary requirements as to form and solemnity required by the laws of Texas had been observed in the will.

On April 14, 1969, Gerónimo and his sister Ana Luisa Quiñones Arroyo filed a complaint against the vendees of the

real property, spouses Escalera Irizarry, alleging the nullity of the recording of said purchase and that actually the only owners of said real property were appellants which was corroborated by the corresponding declaration of heirship which they made.

Spouses Escalera Irizarry answered the complaint denying the facts in the same because plaintiffs did not constitute the Heirs of Rosario Quiñones as they had not been designated heirs in her will.

As special defenses they alleged the prescription of the action of nullity and, also, alleged that spouses Escalera Irizarry are owners in good faith and that the will is valid because all requisites established by law have been observed in the same.

Defendants, also, filed a document which they entitled "Demurrer to the Complaint" which in effect is a repetition of the allegations in the answer. Afterwards they filed motions to amend the demurrer and filed the amended answer reiterating the defense of nullity of the will and alleging the extraordinary prescription to be counted from the day the will was executed. Both parties have filed numerous motions and briefs in support of their different contentions. The deed of sale and the will in question, and the deed of protocolization of the same dated March 14, 1968, executed before notary Charles H. Juliá were offered as part of the record for the hearing.

Appellees requested summary judgment because they alleged that the will executed complied with all the requirements and formalities of the law of Texas. On their part appellants also requested summary judgment because the will was void.

The trial court rendered judgment on July 31, 1970, to the effect that it was not proper to render judgment declaring the nullity of the will because the action of nullity had prescribed since, as it is a personal action, the term of prescrip-

tion is 15 years counted from the date on which the will was executed said term having already elapsed since the will was executed in the year 1933.

At the threshold we must decide whether or not the will in question is void. If it is, we must determine whether the action of nullity is personal. If it is, we must determine when does the prescriptive term of 15 years for such action begin to run. If the action has not prescribed then we must determine whether appellees and the Institute have acquired title over the property for having been in possession of the same in good faith and with proper title for 10 or more years. (Section 1857 of the Civil Code, 31 L.P.R.A. § 5278.)

■ Pursuant to § 11 of the Civil Code (31 L.P.R.A. § 11) and as we held in *Armstrong* v. *Armstrong*, 85 P.R.R. 387 (1962), wills executed in a foreign country pursuant to the forms and solemnities of said country are valid in Puerto Rico as to the conveyance of real property in Puerto Rico. So that as to the validity and effectiveness of the will in question we should resort to the law of the State of Texas.

■ The will in this case is void because it does not meet the requirements of the Texas law since (1) it does not appear that it was admitted to probate within the term of four years after the death of the testatrix as the Texas law prescribes (Laws of 1955, 54th Leg., p. 88, ch. 55, Vernon's Civil Statutes of the State of Texas, §§ 73, 74, and 94, pp. 318, 322, and 399), and (2) it was not authenticated in such manner that the testimony of the witnesses in the probate thereof was made unnecessary as required by the aforecited Texas statute (Vernon's, *supra*, § 59, p. 272), inasmuch as (a) the notary who attested the signing of the will by the testatrix and the two witnesses did not certify that the latter were over 14 years of age, nor that they had signed in the presence of the testator; (b) and that the testatrix was over 19 years of age, and (c) the testatrix and the

witnesses did not sign the notarial authenticating document as only one of the witnesses signed what appears to be such authentication.

In Texas a will not authenticated to avoid its probation, that is not admitted to probate as the law requires, is ineffective as means to prove or convey the title of real property. *Teague* v. *Wylie*, 110 S.W.2d 941 (Texas Ct. App. 1937).

Even assuming that we would apply to wills the majority opinion of *Widow of Ruiz* v. *Registrar*, 93 P.R.R. 893 (1967), to the effect that the doctrine of § 11 of the Civil Code should be construed in a facultative, potestative, or optional manner and not in a coactive or imperative manner, the will in question continues being void under the provisions of the Civil Code in effect in Puerto Rico since it is not a holographic will because it was not handwritten by the testatrix, and had it been so, it was not protocolized within the five years from the date of the testatrix's death as required by § 639 of said Code (31 L.P.R.A. § 2163). Neither can it be considered as an effective open will as the hour in which it was executed is not mentioned therein. *Ex parte Planis*, 42 P.R.R. 665 (1931); *García* v. *Rexach*, 65 P.R.R. 493, 495–496 (1945); *Pacheco* v. *Heirs of Pacheco*, 66 P.R.R. 749 (1947).

Now then, it is an established rule that the action to annul a will is personal, and therefore, prescribes within a term of 15 years. This Court said in *Arroyo* v. *Fernández*, 68 P.R.R. 477, 480–481 (1948), in effect, that this term should be counted since the will was executed. It is thus affirmed in the Judgment of the Supreme Court of Spain of June 20, 1949, as this court states that the action is originated when the right is originated which is the date of execution of the will.

It may be argued that this doctrine should not prevail as practically in many cases it would make impossible the filing

of the action to nullify a will. It is not possible to file it during the lifetime of the testator in view of the secretiveness which the testamentary act always entails. Therefore if the testator lives more than 15 years after making the will, there is no way to achieve the nullity of his will afterwards.

Also, as Santa María indicates (II *Comentarios al Código Civil* 1022–1023), "The term of extinctive prescription begins to run since the right is originated and may be exercised without hindrance by the author or the persons having a cause of action because it is not fitting to lose an action by abandonment while it is not actionable but which must be *actio nata;* and therefore, for the extinctive prescription to begin to run there must be a right capable of being exercised, that is, an already originated right, and which has been added as true and perfect entity to the property of the title holder."

Scaevola tells us: ". . . the action having been originated in the event the same is injured, the term of prescription must be counted, in every case, from the day the same could have been instituted which is as much as saying since an effectiveness of the right was made demandable, which by its own origin, realization which is synonymous to perfection, had not been able to achieve." (XXXII-II *Código Civil* 890.)

The judgment of the Supreme Court of Spain of January 29, 1952, states that "Section 1969 [1869 ours] does not refer to the expiration of the action, but to the exercise thereof . . . for the prescriptive term of actions during which they could have been effectively exercised to achieve their total effect should be computed . . . ."

In *Ríos* v. *Banco Popular*, 81 P.R.R. 368, 379, 380, 397 (1959), we said that the term of prescription of 15 years should be counted from the day "the action could have been instituted"; since the deprivation of the right is consummated; since plaintiffs' right, appellants herein, "could have been asserted because it was impaired or violated"; "from the moment there is action", that is, "the right asserted in

justice"; since the right can be judicially prosecuted. (Section 1869, Civil Code—31 L.P.R.A. § 5299.)

It may be argued that appellants' right to the property of the testatrix, who was their sister, and therefore, they were not forced heirs, could not arise in its entirety when the will was executed since the testatrix, until she died, could have had her own or adopted children, who by their existence could extinguish in great part appellants' hereditary right; that their right to action concerning the will in issue arose when the testatrix died as it is from that very moment that appellants right can be judicially prosecuted, when the right can be instituted; that from that moment appellants' obligation to establish their condition as testatrix's heirs arose; that it was not sufficient that they do it through the procurement of a declaration of heirship since they should have determined what property did the testatrix leave, who possessed it, and with what right did said possessor occupy said property; that their right as heirs was "impaired or violated" from the date of the predecessor's death.

We cannot agree with appellants that the departure point of the prescription term of 15 years should be the date when the will was protocolized in 1968 or the date of the sale of the property in question in 1967 as one of these dates was when appellants had knowledge for the first time of the will in issue. As we have previously indicated, the precise knowledge of the existence of the will is not the controlling factor of the departure point of said prescriptive term.

■ From the foregoing, it seems obvious that the prescriptive term of the action to annul the will is extinguished because the term of 15 years has elapsed, since the will was executed in 1933 as well as since the testatrix's death in 1940.

In view of the foregoing, we need not determine whether appellees have acquired the ownership of the property in question by possession during ten years in good faith and just title.

As we have previously indicated, the judgment of the trial court to the effect that the action to annul the will in question has prescribed should be affirmed.

Mr. Justice Hernández Matos did not participate herein.